OPINION
Christine Janway ("Janway") appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, which granted permanent custody of Taylor Dean Janway ("Taylor") to the Montgomery County Children Services Board ("the MCCSB"). Taylor was born on February 14, 1999. On April 22, 1999, the MCCSB filed a dependency complaint in which it sought temporary custody of Taylor based on Janway's inability to care for him. As a result, Taylor was placed in foster care. Janway was a minor herself at the time, and the whereabouts of Taylor's father were unknown. On July 22, 1999, the MCCSB was awarded temporary custody of Taylor. The same day, the MCCSB moved for permanent custody of Taylor, alleging that Janway had visited Taylor only once since his placement in foster care, that Janway had not worked toward accomplishing any of the goals in her case plan, and that no other relatives were willing or able to care for Taylor. A magistrate conducted a hearing on the motion for permanent custody on January 25, 2000. At the hearing, Janway agreed to having her parental rights terminated and to placing Taylor in the permanent custody of the MCCSB. Accordingly, the state offered very little evidence bearing on its reasons for seeking permanent custody. Most of its evidence focused on the agency's efforts to contact Taylor's alleged father and its inability to do so. The magistrate recommended granting permanent custody to the MCCSB.
In the days following the hearing, Janway apparently had a change of heart about agreeing to the termination of her parental rights, in large part because the friends with whom she lived said that there would be room for Taylor and that they would help Janway care for Taylor. Thus, along with her objections to the magistrate's decision, Janway filed an affidavit setting forth a "change in circumstances" regarding her living situation and her desire to retain parental rights. The trial court overruled Janway's objections to the magistrate's report, finding that there had been no abuse of discretion and that acquiring stable housing had been only one part of Janway's case plan.
Janway raises three assignments of error on appeal. Because they raise similar arguments, we will address the second and third assignments together.
 I. APPELLANT WAS DENIED HER CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.
Janway argues that she was denied the effective assistance of counsel regarding the revocation of her consent to the termination of her parental rights. Janway claims that she changed her mind about consenting to the surrender "immediately after the hearing," but that her attorney did not convey this fact to the court in a timely fashion.
Janway's ineffective assistance argument is premised on the statutory procedure for the voluntary surrender of parental rights, embodied at R.C. 5103.15, which provides that a parent may agree to surrender permanent custody of a child with the approval of the juvenile court so that the child may be placed for adoption. The supreme court has interpreted this statute to permit the withdrawal of a parent's consent any time prior to the juvenile court's approval of the agreement. SeeAngle v. Children's Serv. Div. (1980), 63 Ohio St.2d 227, paragraph two of the syllabus. Janway claims that her attorney was ineffective because he knew of her change of heart but did not adequately inform the court of her desire to withdraw her consent prior to the magistrate's approval of the surrender.
We find several flaws in Janway's argument. First, Janway's attorney did inform the court that she had changed her mind after the magistrate had filed his report and recommendation but before the trial court had approved the report and recommendation. Attaching Janway's affidavit to her objections provided the trial court with notice of her change of heart. Because the trial court is free to reject or modify a magistrate's recommendation, which is not a final order until the court adopts it, the attorney's notice to the court, i.e., objections and Janway's affidavit, would presumably have been a valid withdrawal of consent if these proceedings had been conducted pursuant to R.C. 5103.15. The termination of Janway's parental rights, however, was not a voluntary agreement to surrender permanent custody as contemplated by R.C. 5103.15. Rather, before this matter came for a hearing in the juvenile court, the state had removed Taylor from Janway's custody, had acquired temporary custody of the boy, and was actively pursuing the permanent termination of Janway's parental rights pursuant to R.C. 2151.414 because of her inability to care for him. The state intended to terminate Janway's parental rights with or without her consent. Janway had "agreed" to placing Taylor in the custody of MCCSB only in the sense that she had not contested the termination of her parental rights at the hearing and, because of that, the state had not fully presented its evidence in support of the termination of Janway's rights. Her agreement with the court's disposition was not required as it would have been in a proceeding pursuant to R.C. 5103.15. For these reasons, Janway's argument about the prejudicial effect of her attorney's alleged failure to properly withdraw her consent is without merit.
The first assignment of error is overruled.
 II. THE COURT ERRED IN FAILING TO ACCEPT APPELLANT'S AFFIDAVIT AS HER REVOCATION OF CONSENT TO PERMANENT RELINQUISHMENT OF CUSTODY, OR IN THE ALTERNATIVE, ERRED IN FAILING TO MAKE FURTHER INQUIRY INTO THE VOLUNTARINESS OF HER SURRENDER OF CUSTODY.
 III. THE RECORD DOES NOT DEMONSTRATE THAT APPELLANT RELINQUISHED CUSTODY FREELY, KNOWINGLY AND VOLUNTARILY WITH FULL KNOWLEDGE OF ESSENTIAL FACTS.
Under these assignments of error, Janway reiterates that the trial court should have permitted her to withdraw her consent to the termination of her parental rights. She also contends that the court should have inquired as to whether her consent was voluntary.
As we have discussed supra, Janway's consent was not required for the termination of her parental rights pursuant to R.C. 2151.414. As such, we are unpersuaded that the trial court was under an obligation to inquire as to whether Janway had relinquished her parental rights knowingly and voluntarily. Moreover, Janway was able to accurately summarize the effect of the termination of her parental rights at the hearing when asked to do so, indicating her understanding of the proceeding.
In light of Janway's change of heart about agreeing to the termination of her parental rights, however, we are troubled by the fact that Janway's willingness to go along with the termination of her rights at the time of the hearing served to relieve the state of its burden to show by clear and convincing evidence that it was in Taylor's best interest to grant permanent custody to the MCCSB. See R.C. 2151.414(B). The state called only one witness, the caseworker, and her testimony was perfunctory. The caseworker testified, without elaboration, that she did not think that reunification of the family was possible in the near future, that there were some people interested in adopting Taylor, and that, in her opinion, it was in Taylor's best interest to grant custody to the MCCSB. The rest of the caseworker's testimony focused on her unsuccessful efforts to find Taylor's father and Janway's father. No specifics were provided about Janway's case plan, her efforts to meet its objectives, or her apparent failure to do so. In other words, the state did not present clear and convincing evidence from which the trial court could have concluded that it was in Taylor's best interest to grant permanent custody to the MCCSB. It was understandable that the state did not present and the magistrate did not require such evidence when Janway agreed that she could not care for Taylor and that his interests would be best served by granting custody to the MCCSB. However, when Janway changed her mind before the MCCSB's request had been granted, we think that the trial court should have required the state to present more fully its evidence that the termination of Janway's parental rights was, indeed, in Taylor's best interests. Then the court could have determined whether there was clear and convincing evidence that Taylor's best interest would be served by granting permanent custody to the MCCSB and that he could not or should not be placed with either parent within a reasonable time. R.C. 2151.414(B). We realize that this exercise may prove to be somewhat academic, but we think it is warranted by the important rights at issue.
Janway's arguments about the voluntariness of her consent are overruled. We do find, however, that in the absence of Janway's consent, the trial court should have conducted a more thorough hearing to determine whether Taylor's interests were best served by granting permanent custody to the MCCSB.
The judgment of the trial court will be reversed. The matter will be remanded to the trial court for further proceedings.
 __________________ WOLFF, J.
BROGAN, J. and YOUNG, J., concur.